**WALTERS v. THOMPSON et al.**

**No. 6179.**

Court of Civil Appeals of Texas. Texarkana.

Aug. 2, 1945.

Rehearing Denied Oct. 4, 1945.

Shook & Shook, of Dallas, for appellant.

Lewis & Chandler, of Jacksonville, for appellees.

HARVEY, Justice.

This is an appeal from a judgment entered in an interpleader suit which was filed for the purpose of determining the ownership of a certain fund paid into court and which was realized from the sale of a tract of land under a foreclosure sale.

In December, 1916, A. W. Caveness and wife bought a tract of 154.5 acres of land in Cherokee County against which there was reserved a vendor's lien to secure the payment of a part of the purchase price. This lien subsequently was acquired by the Federal Land Bank of Houston, kept renewed, and later was secured in addition by a deed of trust. In 1918 the wife of Caveness died, leaving two children, Weldon and Ernest, who inherited her one-half of the community interest in the tract of land. In 1925, Caveness and his second wife deeded to J. M. Meador one-half the minerals under the entire tract, and Meador in turn sold to Mrs. Eula Thompson one-fourth of the minerals, by deed dated May 4, 1929. Also, in 1927, A. W. Caveness and wife executed a mechanic's lien against the land in question in favor of J. M. Meador, which lien thereafter was assigned to M. A. Walters, and at the time of the foreclosure sale amounted to about $1,200. It will be noted that Mrs. Thompson acquired her mineral interest from J. M. Meador after the mechanic's lien was fixed against the land. M. A. Walters paid the installments due on the lien held by the Federal Land Bank, amounting to $742.36, for which he received assignments from the said bank. Upon another installment becoming due, at the request of Walters the bank foreclosed their lien for the amount then due, and the land was sold at trustee's sale to M. A. Walters for the sum of $3,350, subject to the remainder of the unpaid note and lien held by the bank. Walters was allowed credit on his bid for the $742.36 previously paid to the bank by him and for which he held assignments. The trustee, S. C. Evans, who made the sale, filed an interpleader suit in Cherokee County, depositing in court the sum of $2,607.64 which remained after the credit mentioned had been allowed, and asked the court to direct disposition of it to such parties as legally might be entitled to it. Various parties, including M. A. Walters, the heirs of

J. M. Meador, and Mrs. Eula Thompson and husband, were made parties to the suit. On a trial to the court without a jury, the court found that the value of the mineral interest belonging to Mrs. Eula Thompson was $772.50, which sum was awarded to her out of the amount paid into court and without any part of the costs being assessed against her interest in the minerals. M. A. Walters excepted to the court's action in this respect and has perfected this appeal, contending that since the land sold was the homestead of A. W. Caveness and wife, it was error on the part of the trial court to exonerate the Thompson mineral interest entirely from the prior paramount vendor's lien, which would be, according to his view, a subjection of the Caveness' homestead to the satisfaction of obligations not properly chargeable against it. Also, the points are presented that Mrs. Eula Thompson failed to show by proper evidence what sum her interest in the land sold for, by reason of which there was no basis for an allotment to her of any part of the money realized from the sale, and that the court erred in not taxing part of the court cost against her. M. A. Walters was awarded title to the land and mineral interests under the trustee's sale, as well as the remaining portion of the money paid into court, inasmuch as by deed from Weldon and Ernest Caveness he had become vested with their one-half interest in the land, and by assignment from A. W. Caveness he had acquired his right to any of the proceeds of the sale which had been deposited in court.

Under the mineral deed from J. M. Meador, Mrs. Eula Thompson acquired a one-fourth interest in the mineral estate in the land, burdened, of course, with the outstanding vendor's lien, just as the one-half interest of Weldon and Ernest Caveness was burdened with this lien. The court found in its judgment, with support in the evidence, that the Thompson mineral interest was worth $772.50. The land and mineral interest together brought $3,350, plus the assumption of about $1,200 still due the bank on its vendor's lien, making a total consideration of $4,550. The testimony on the trial was to the effect that the minerals were worth $20 per acre, which would make a total of $3,190. This sum subtracted from the $4,550 would leave $1,360 as the value of the surface estate. It is true that no direct testimony was offered on the trial as to the value of the surface of the land, but in the state of the record, nothing to the contrary appearing, it will be presumed that the minerals and surface estate each brought its respective value at the trustee's sale, which in this case is ascertainable by calculation. 31 C.J.S., Evidence, § 150, subsec. f, p. 841; Beneficial Loan Society of New Orleans v. Strauss, La.App., 148 So. 85; Magnolia Petroleum Co. v. Farmersville Ind. Gin Co., Tex.Civ.App., 243 S.W. 568. At any rate, from the record as a whole, there was evidence before the court from which he might have made deductions as to the relative values of the surface and mineral estates in the land. It will be seen that the proceeds of the sale were sufficient to pay off the amounts of the original vendor's lien installments paid by M. A. Walters, as well as the one-half interest of Weldon and Ernest Caveness, with enough left over to satisfy the value of the one-fourth mineral interest owned by Mrs. Thompson.

We do not think the question of homestead is of any controlling importance in this case. It is not a situation in which a homestead is burdened with several liens, with an excess in the homestead out of which one or more of the lienholders could be forced to resort. Instead, it is a case where the owner of the homestead sold a part of it, and upon a sale of the entire homestead tract a sufficient price was realized to pay off the original lien foreclosed, and the subsequent vendees were entitled to be paid for their respective interests out of the excess in the order of their priority. The only lien burdening the one-fourth mineral interest of Mrs. Thompson was the vendor's lien given for the purchase price of the land. An additional reason why the homestead question is unimportant herein, is that A. W. Caveness and wife permitted a default judgment against them and did not plead any homestead rights; thereafter, when they assigned to M. A. Walters any interest they had in the proceeds of the sale of their homestead such assignment did not entitle him to claim that the money was not subject to the payment of the Thompson interest, court costs, and such other claims as were allowed by the court. The rights that might have arisen out of a homestead claim were personal to A. W. Caveness and wife, and could only be pleaded by them. M. A. Walters was not in position to assert such rights under an assignment of the share of Caveness and wife in the proceeds of the sale. Maxey et al. v. Patterson et al., Tex. Civ.App., 82 S.W.2d 386. The case of Burg v. Hitzfeld et al., Tex.Civ.App., 89 S.W.2d

272, cited by appellant, is not in point with the facts of this case.

In taxing the costs in this suit the trial court exercised his discretion in adjudging which interests in the land should be chargeable with them. He exonerated the interest of Mrs. Thompson, who held a warranty deed from J. M. Meador, and since there was an excess in the sale proceeds in favor of A. W. Caveness after payment of the lien foreclosed as well as of the Thompson interest, we do not feel that the court's action in the matter of taxing the costs should be disturbed.

The judgment is in all things affirmed.